579 S.E.2d 538

**The STATE, Respondent,**

v.

**Wayne WRIGHT, Appellant.**

No. 3628.

Court of Appeals of South Carolina.

Submitted March 10, 2003.

Decided April 14, 2003.

Assistant Appellate Defender Robert M. Pachak, of Columbia, for Appellant.

Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, Assistant Attorney General W. Rutledge Martin, and Warren B. Giese, all of Columbia, for Respondent.

HOWARD, J.

Wayne Wright was convicted of attempted second-degree burglary. Wright appeals, arguing the indictment was insufficient to confer subject matter jurisdiction, and the State violated *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), by improperly striking a juror based on racial considerations. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

A grand jury indicted Wright for attempted first-degree burglary. The caption of the indictment stated, "Attempted Burglary (Dwelling) FIRST DEGREE Common Law—No Classification," and the text of the indictment alleged:

> That TONY WAYNE WRIGHT AKA WAYNE BRUCE WRIGHT did in Richland County on or about June 7, 2000 attempted [sic] to enter the dwelling of Marion Summers without consent and with the intent to commit a crime therein and the defendant has two or more prior convictions for burglary and/or housebreaking or a combination thereof. . . .

When the case was called for trial, the State exercised peremptory challenges to strike three black jurors. Wright

objected and requested a *Batson* hearing. The State averred Juror 22 and Juror 163 were dismissed because they had criminal records. Neither strike is in contention here. As to the dismissal of Juror 29, the assistant solicitor gave the following explanation:

> HER EMPLOYMENT IS LISTED AS A BILINGUAL TRANSLATOR. WE DIDN'T SEAT ANY OTHER TRANSLATORS FOR SURE. AND JUST BASED ON HER ACCENT, I DON'T KNOW, I JUST AM NOT SURE OF HER COMMAND OF THE ENGLISH LANGUAGE. MY FIRST—MY GUT INSTINCT WAS THAT, EVEN THOUGH SHE IS A TRANSLATOR, SHE MIGHT NOT HAVE, YOU KNOW, JUST BASED ON HER ACCENT, I DON'T KNOW WHERE SHE IS FROM, IF SHE IS FROM THE UNITED STATES, AND THAT JUST GAVE ME SOME CAUSE OF CONCERN.

Responding to the State's explanation, Wright's counsel noted the State did not strike Juror 123 who was German and had a "huge accent." The State responded:

> [JUROR 29] WAS JUST MORE SOFT-SPOKEN THAN [JUROR 123], BUT—AND MAYBE I'M JUST MISREADING HER EMPLOYMENT. I GOT THE SENSE THAT [JUROR 123] WAS SORT OF—SHE INDICATED THAT SHE WORKED FOR THE FIRE DEPARTMENT. SHE IS SOME SORT OF COMPUTER OPERATOR. I GOT THE SENSE FROM THAT THAT SHE WAS SOME SORT OF—I WON'T SAY 911 OPERATOR, BUT SOMETHING TO DO WITH COMMUNICATIONS BETWEEN THE FIRE DEPARTMENT AND THE PUBLIC. I COULD BE MISREADING HER EMPLOYMENT, BUT I FELT BECAUSE THAT THAT WAS HER LINE OF WORK SHE WAS PROBABLY MORE IN TUNE WITH, YOU KNOW, THE ENGLISH LANGUAGE THAN THE [JUROR 29].

The State further explained:

> I DIDN'T HAVE ANY INFORMATION THAT [JUROR 123] WAS FROM GERMANY, AND IN FACT AT THE JURY QUALIFICATION SHE INDICATED THAT SHE WORKED AT THE FIRE DEPARTMENT, THAT IS WHY I MADE THAT CONNECTION BECAUSE SHE

WORKS ON COMPUTERS AND SHE WORKS AT THE FIRE DEPARTMENT THAT SHE MUST DO SOME SORT OF COMMUNICATIONS THERE AKIN TO 911 OPERATIONS.

The circuit court ultimately ruled the State's peremptory strikes did not violate *Batson*, and the jury was seated and sworn. Wright was convicted of attempted second-degree burglary and sentenced to fifteen years imprisonment. Wright appeals.

## I. Indictment

■ Wright argues the indictment does not confer subject matter jurisdiction on the circuit court because common law burglary requires that the entry occur during the nighttime. *State v. Washington*, 338 S.C. 392, 397, 526 S.E.2d 709, 711 (2000). Wright argues the indictment contains no allegation that the entry was attempted at night, and since the caption and body of the indictment label the offense as attempted burglary—common law, it fails to sufficiently allege the elements of the offense. We disagree with this reading of the indictment.

■ Subject matter jurisdiction may be raised at any time by the parties or sua sponte by the court. *See State v. Castleman*, 219 S.C. 136, 139, 64 S.E.2d 250, 252 (1951). The circuit court does not have subject matter jurisdiction to convict a defendant of an offense unless there is an indictment that sufficiently states the offense, the defendant waives presentment, or the offense is a lesser-included offense of the crime charged in the indictment. *State v. Owens*, 346 S.C. 637, 648, 552 S.E.2d 745, 751 (2001). "The true test of the sufficiency of an indictment is not whether it could be made more definite and certain, but whether it contains the necessary elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet." *Browning v. State*, 320 S.C. 366, 368, 465 S.E.2d 358, 359 (1995).

The caption of the indictment reads, "Attempted Burglary (Dwelling) FIRST DEGREE Common Law—No Classification."

Until 1985, burglary was a common-law offense. *See* Patricia Seets Watson & William Shepard McAninch, *Guide to South Carolina Criminal Law and Procedure,* 270–71 (4th ed.1994). Common law burglary did not have separate degrees. *See Washington,* 338 S.C. at 397, 526 S.E.2d at 711.

In 1985, the South Carolina legislature enacted South Carolina Code Annotated section 16–11–311 (2003), which divided the offense into three degrees of burglary, including first-degree burglary. *See Guide to South Carolina Criminal Law and Procedure, supra,* at 270–71. First degree burglary is defined as follows:

(A) A person is guilty of burglary in the first degree if the person enters a dwelling without consent and with intent to commit a crime in the dwelling, and either:

(1) when, in effecting entry or while in the dwelling or in immediate flight, he or another participant in the crime:

(a) is armed with a deadly weapon or explosive; or

(b) causes physical injury to a person who is not a participant in the crime; or

(c) uses or threatens the use of a dangerous instrument; or

(d) displays what is or appears to be a knife, pistol, revolver, rifle, shotgun, machine gun, or other firearm; or

(2) the burglary is committed by a person with a prior record of two or more convictions for burglary or housebreaking or a combination of both; or

(3) the entering or remaining occurs in the nighttime.

S.C.Code Ann. § 16–11–311 (2003).

The indictment accused Wright of attempting to commit first-degree burglary. Although first-degree burglary is a statutory offense, an attempt to commit the crime is a common-law offense. *See* William S. McAninch & W. Gaston Fairey, *The Criminal Law of South Carolina,* 354 (3d ed.1996); *see also* S.C.Code Ann. § 16–1–80 (2003) ("A person who commits the common law offense of attempt, upon conviction, must be punished as for the principal offense."). Thus, the State accused Wright of the common-law offense of attempting to commit the statutorily defined crime of burglary in the first degree. Therefore, for the indictment to be

sufficient to confer jurisdiction, the State was required to allege the elements of both attempt and first-degree burglary, not attempt and common-law burglary.

The indictment alleges Wright attempted to enter the dwelling of another, without consent, and with the intent to commit a crime. The indictment also alleges Wright has two or more prior convictions for burglary and/or housebreaking, or a combination of the two. These allegations are sufficient to allege attempted first-degree burglary,[1] and the circuit court had subject matter jurisdiction.[2]

## II. *Batson* Violation

■■■■ Wright argues the circuit court erred by allowing the State to exercise peremptory challenges in a racially discriminatory manner in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

It is well settled "[t]he Equal Protection Clause of the Fourteenth Amendment to the United States Constitution

---

1. Furthermore, even assuming the caption was defective, there is no jurisdictional flaw. *See Tate v. State*, 345 S.C. 577, 581, 549 S.E.2d 601, 603 (2001) ("It is the body of the indictment rather than its caption that is important. If the body specifically states the essential elements of the crime and is otherwise free from defect, defect in the caption will not cause it to be invalid." (quoting *State v. Marshall & Brown–Sidorowicz, P.A.*, 2 Kan.App.2d 182, 577 P.2d 803, 811 (1978))); *cf. State v. Wilkes*, 353 S.C. 462, 466, 578 S.E.2d 717, 719 (2003) (holding when reviewing an indictment for jurisdictional sufficiency, the caption, when consistent with the body, may be used to supplement the body of the indictment).

2. The circuit court had subject matter jurisdiction to convict Wright of attempted second-degree burglary because attempted second-degree burglary is a lesser-included offense of attempted first-degree burglary. *See Owens*, 346 S.C. at 648, 552 S.E.2d at 751 (holding the circuit court has subject matter jurisdiction to convict a defendant of an offense where: 1) there is an indictment that sufficiently states the offense, 2) the defendant waives presentment, or 3) the offense is a lesser-included offense of the crime charged in the indictment); *State v. Watson*, 349 S.C. 372, 375, 563 S.E.2d 336, 337 (2002) ("The primary test for determining if a particular offense is a lesser included of the offense charged is the elements test. The elements test inquires whether the greater of the two offenses includes all the elements of the lesser offense." (internal citations omitted)); S.C.Code Ann. § 16–11–312 (2003) ("A person is guilty of burglary in the second degree if the person enters a dwelling without consent and with intent to commit a crime therein.").

prohibits the striking of a venire person on the basis of race."
*State v. Shuler,* 344 S.C. 604, 615, 545 S.E.2d 805, 811 (2001).
When one party strikes a member of a cognizable racial group,
the circuit court must, upon request by the opposing party,
hold a *Batson* hearing. *See State v. Haigler,* 334 S.C. 623,
629, 515 S.E.2d 88, 90–91 (1999). The proponent of the strike,
to successfully rebut the presumption of a *Batson* violation,
must then offer a race-neutral explanation. *Id.* The opponent
must then show the race-neutral explanation was mere pre-
text, which can be established by showing the proponent did
not strike a similarly situated member of another race. *Id.*

Whether a *Batson* violation has occurred must be
determined by examining the totality of the facts and circum-
stances in the record. *Shuler,* 344 S.C. at 615, 545 S.E.2d at
810. The opponent of the strike carries the ultimate burden
of persuading the circuit court the challenged party exercised
strikes in a discriminatory manner. *State v. Adams,* 322 S.C.
114, 124, 470 S.E.2d 366, 372 (1996).

The record indicates Wright timely objected to the State's
peremptory strikes. Thereafter, the State averred a race-
neutral reason for each of the peremptory strikes. Specifical-
ly, as to Juror 29, the State explained that although she was a
bilingual translator, she had a heavy accent, and the State was
unsure as to her command of the English language. Wright
then responded the State did not strike Juror 123, a white
German woman who also had a "huge accent." The State
countered that it was under the impression Juror 123 worked
in communications at the fire department and would thus have
a better grasp of the English language. Based on this dia-
logue, the circuit court found the State's peremptory strike did
not violate *Batson.*

The circuit court's findings regarding purposeful discrimina-
tion rest largely on its evaluation of demeanor and credibility,
matters within the peculiar province of the circuit court.
*Sumpter v. State,* 312 S.C. 221, 224, 439 S.E.2d 842, 844 (1994);
*Hernandez v. New York,* 500 U.S. 352, 364, 111 S.Ct. 1859
(1991) (holding often the demeanor of the challenged attorney
will be the best and only evidence of discrimination, and
"evaluation of the prosecutor's mind lies peculiarly within a
circuit court's province"). Even though we are skeptical of

the reasons advanced by the striking party, we will not disturb the decision of the circuit court unless its ruling is clearly erroneous. *Shuler*, 344 S.C. at 615, 545 S.E.2d at 810; *see also Hernandez*, 500 U.S. at 365 (holding the United States Supreme Court, when reviewing a state court's decision on a *Batson* claim, will use the clearly erroneous standard).

Viewing the record in light of our standard of review, the circuit court's conclusion was not clearly erroneous. Although we recognize Juror 29 and Juror 123 are similarly situated in that they both have foreign accents, the State distinguished them by their observable command of the English language, as well as what the State perceived their occupations to be. These were proper race-neutral considerations. *See Matthews v. Evatt*, 105 F.3d 907, 918 (4th Cir.1997) (holding the State is allowed to consider tone, demeanor, facial expression, and any other race-neutral factors when striking jurors). Thus, the circuit court did not err.

## CONCLUSION

Based on the foregoing, Wright's conviction for attempted second-degree burglary is

**AFFIRMED.**

CURETON and STILWELL, JJ., concur.