Affirmed by Supreme Court opinion
filed 3/27/02

Cert granted by Supreme Court on 4/16/01

Filed:  March 6, 2001

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 00-4
(CA-98-102-3)

Walter Mickens, Jr.,

Petitioner - Appellant,

versus

John B. Taylor, etc.,

Respondent - Appellee.

O R D E R

The court amends its opinion filed February 16, 2001, as follows:

On page 23, first full paragraph, line 18 -- the comma after the word "knew" is deleted.

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

WALTER MICKENS, JR.,
Petitioner-Appellant,

v.

JOHN B. TAYLOR, Warden, Sussex I
State Prison,
Respondent-Appellee.

No. 00-4

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(CA-98-102-3)

Argued: December 5, 2000

Decided: February 16, 2001

Before WILKINSON, Chief Judge, and WIDENER, WILKINS,
NIEMEYER, LUTTIG, WILLIAMS, MICHAEL, MOTZ,
TRAXLER, and KING, Circuit Judges.

_____

Affirmed by published opinion. Judge Widener wrote the majority
opinion, in which Chief Judge Wilkinson and Judges Wilkins, Nie-
meyer, Luttig, Williams, and Traxler joined. Judge Michael wrote a
dissenting opinion, in which Judge Motz and Judge King joined.

_____

COUNSEL

ARGUED: Robert James Wagner, WAGNER & WAGNER, Rich-
mond, Virginia, for Appellant. Robert Quentin Harris, Assistant

Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellee. **ON BRIEF:** Robert E. Lee, Jr., VIRGINIA CAPITAL REPRESENTATION RESOURCE CENTER, Richmond, Virginia, for Appellant. Mark L. Earley, Attorney General of Virginia, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellee.

_____

## OPINION

WIDENER, Circuit Judge:

In 1993 a jury in the Circuit Court of the City of Newport News, Virginia convicted Walter Mickens (Mickens) of the capital murder of Timothy Hall (Hall). Mickens was sentenced to death. Mickens' federal habeas attorney later discovered during the preparation of Mickens' federal habeas corpus petition that Mickens' trial counsel had just previously represented Hall on a charge unrelated to Hall's death. Mickens argues that, because of this prior representation, his attorney labored under a conflict of interest that rendered his representation of Mickens inadequate to satisfy Mickens' Sixth Amendment guarantee of effective counsel. Principally, because Mickens has failed to show that such conflict of interest adversely affected the quality of his representation, we deny Mickens' petition for habeas corpus relief. We hold the incidental claims of Mickens are also without merit.

I.

We describe the facts of this crime as they have been summarized by the Supreme Court of Virginia, <u>Mickens v. Commonwealth</u>, 442 S.E.2d 678, 681-83 (Va. 1994). See 28 U.S.C. § 2254(e)(1).

On March 28, 1992, Timothy Hall, age seventeen, lived with his fourteen-year-old friend, Raheem Gordon, and Gordon's father in Gordon's Newport News, Virginia apartment. Hall and Gordon often shared clothes, and Hall was wearing his roommate's Nike brand "Cross Trainer" tennis shoes on that night. Between 7:00 and 8:00 p.m. that evening, Hall drove young Gordon to a party in a nearby

2

apartment building. Hall's stated intention was to return to the party later in the evening, but he never arrived.

Around 8:00 p.m., shortly after Gordon's arrival at the party, two other guests at the party, Vincent West and Bruce Mitchell, left the party and went to a nearby convenience store. After leaving the convenience store, West and Mitchell took their purchases to a public park adjacent to the apartment building in which the party was held. While sitting in the park, West and Mitchell saw a man with a bicycle hiding in some bushes and looking at them. The man was later identified as the petitioner, Walter Mickens.

The following day, Gordon saw Hall's automobile parked near the site of the party in the same place it had been parked the previous night. On March 30, 1992, two days after the party, a man walking along the James River in Newport News saw a body beneath an abandoned construction company building. The body was lying face down on a mattress under a sheet of plywood. The body was nude from the waist down, except for socks, and its legs were spread apart. Pubic hairs were recovered from the buttocks of the body. There were bloody "transfer" stains on the outsides of the victim's thighs, and there was a white liquid substance close to his anus. The victim was identified as Timothy Hall.

An autopsy revealed that Hall had suffered 143 separate "sharp force injuries." The medical examiner concluded that Hall had bled to death and that 25 of the wounds were fatal, including stab wounds to the lungs, skull and brain, liver, neck and jugular vein. The examiner opined that the fatal wounds may not have caused instant death, that Hall could have lived as long as 30 to 40 minutes after infliction of the last wound and that, during this time, he may have been conscious.

On the evening of April 4, 1992, five days after Hall's body was found, Officer D.A. Seals and Detective Dallas Mitchell of the Newport News police responded to a complaint that a black male traveling on a bicycle had assaulted a juvenile. They soon found Mickens, who is black, riding a bicycle in the parking area of the abandoned construction company building where Hall's body had been found. When Officer Seals displayed his badge and approached Mickens, Mickens

3

fled on his bicycle. Mitchell and Seals followed Mickens and took him into custody as he was being detained by other officers. They arrested Mickens on charges involving the assault on the juvenile.

Mickens agreed to talk with the police after being advised of his Miranda rights. Without telling Mickens how Hall had been murdered, Detective Mitchell told Mickens that he knew Mickens had killed Hall. Mickens denied any involvement in Hall's murder asserting,"You didn't find any knife on me, did you?" The following morning, the police obtained warrants charging Mickens with the murder and attempted sodomy of Hall. When Officer Seals handed Mickens the warrants, Mickens said, "I accept the warrants; I accept the charges." Seals asked Mickens what he meant by that, and Mickens responded, "Mother f___r, if I told you I accept the warrants that means I'm guilty, don't it?"

On April 7, 1992, the police found Michael Jacobs wearing the Nike brand "Cross Trainer" shoes that Hall borrowed from Gordon and had been wearing when Gordon last saw him alive. Jacobs testified that he bought the shoes from Mickens for $5.00 the previous week, the same week Hall's body was found.

At trial, expert witnesses presented by the Commonwealth testified that the pubic hairs removed from Hall's buttocks were from an African-American and were alike in "all identifiable microscopic characteristics" to the pubic hair sample taken from Mickens. Tissue attached to the roots of the hairs indicated that the hairs had been forcibly removed, possibly by the rubbing of the assailant's genitals against Hall's buttocks. A sample of human sperm was recovered from the cover of the mattress on which Hall's body was found. DNA analysis (RFLP type) of the sample revealed that Hall could not have produced the sperm. Mickens' DNA pattern was consistent with the DNA pattern in the sperm, however. According to expert testimony presented by the Commonwealth, approximately one in 27,000 Caucasians, one in 6,000 African-Americans, and one in 2,000 Hispanics could have produced sperm consistent with the sample taken from the mattress.

The Commonwealth also presented the testimony of Tyrone Brister, who had been confined in a holding cell at the courthouse

4

with Mickens on March 26, 1993, about a year after Hall's murder. Brister testified that he had asked Mickens why he was in the holding cell and Mickens answered, "They said I stabbed somebody 140 something times in the head." Mickens then lowered his voice and said, "which I did." Mickens also told Brister that "they" said he also sodomized the victim and stole his sneakers. Again, Mickens lowered his voice and said, "which I did."

Mickens was convicted of the capital murder of Timothy Hall under a statute making it a capital offense to commit a premeditated murder during or following the commission of attempted forcible sodomy. See Va. Code Ann. § 18.2-31(5). The jury found that the murder of Timothy Hall was outrageously and wantonly vile and sentenced Mickens to death. The Supreme Court of Virginia affirmed. See Mickens v. Commonwealth, 442 S.E.2d 678 (Va. 1994). The United States Supreme Court granted Mickens' first petition for certiorari and remanded the case "for further consideration in light of Simmons v. South Carolina, 512 U.S. 154 (1994)." Mickens v. Virginia, 513 U.S. 922 (1994). On remand the Supreme Court of Virginia concluded that Simmons mandated a new sentencing hearing because "the jury was entitled to be informed of Mickens' parole ineligibility." Mickens v. Commonwealth, 457 S.E.2d 9, 10 (Va. 1995).[1] On February 5-8, 1996, the trial court held a new sentencing hearing. The jury again fixed Mickens' sentence at death. Mickens appealed, the Supreme Court of Virginia affirmed the sentence, Mickens v. Commonwealth, 478 S.E.2d 302, 307 (Va. 1996), and the United States Supreme Court denied certiorari, Mickens v. Virginia, 520 U.S. 1269 (1997). The Supreme Court of Virginia denied Mickens' petition for a writ of habeas corpus on December 15, 1997.

On June 25, 1998, Mickens filed a petition in federal district court for a writ of habeas corpus under 28 U.S.C. § 2254 (2000). While investigating Mickens' case, Mickens' court-appointed federal habeas counsel was the first to discover that Mickens' lead trial counsel, Bryan Saunders (Saunders), labored under a potential conflict of interest.[2] The Federal habeas attorney had gone to the Newport News

_____

[1] Mickens previously had been twice convicted of robbery, not to mention other convictions. See Va. Code § 53.1-151(B1).

[2] We take the facts relating to Saunders' representation of Mickens from the decision of the district court denying Mickens' petition for federal habeas corpus relief. See Mickens v. Greene, 74 F. Supp. 2d 586 (E.D. Va. 1999).

5

Juvenile and Domestic Relations Court to review Mickens' juvenile case file. While there, counsel also asked the clerk on duty for any files involving Timothy Hall. Although juvenile case files are kept confidential under Virginia law, see Va. Code Ann. § 16.1-305, the clerk mistakenly produced Hall's file. Hall's juvenile file revealed that, at the time of Hall's death, Saunders was representing him on assault and concealed weapon charges. The assault charge originated on February 21, 1992, when Hall's mother swore out a warrant alleging that her son repeatedly had grabbed her by her arms and shoved her to the ground. Hall was charged again on March 13, 1992, when the Newport News police found him in possession of a concealed weapon, a serrated bread knife wrapped in paper. When Hall appeared before the Juvenile and Domestic Relations Court on March 20, 1992, Judge Paul Criver, Jr. appointed Saunders to represent Hall on the two charges. A hearing in the matter was continued until April 3, 1992. Sometime between March 20 and March 28, 1992, when Hall was last seen alive, Hall came to Saunders' office for an interview that lasted between fifteen and thirty minutes. They discussed the circumstances surrounding each of the charged crimes.

On Friday, April 3, 1992, four days after Hall's body was discovered, Judge Aundria Foster of the Juvenile and Domestic Relations Court dismissed the charges against Hall, noting that he was deceased. Judge Foster's handwritten order was entered on the individual docket sheet for Hall's case. The docket sheet was a single page that included Hall's full name, his date of birth, the charges against him, an abbreviated history of the proceedings, and the identity of his appointed lawyer, Bryan Saunders. That same day Saunders went to the courthouse for the scheduled hearing in Hall's case, and someone, Saunders does not recall whom, told him that Hall was dead and that the case had been dismissed. There is no evidence that Saunders appeared before Judge Foster on the day that the charges against Hall were dismissed. Mickens was arrested the next day, Saturday, April 4, 1992. On the following Monday, April 6, 1992, Judge Foster, the same judge who handled the dismissal of Hall's case, appointed Saunders to represent Mickens in his trial for the capital murder of Hall. Mickens' arrest warrants, which appear to have been before Judge Foster when she appointed Saunders, charged that "on or about March 30, 1992" Mickens murdered "Timothy Jason Hall, white male, age 17, by stabbing, and during the commission of an

6

abduction, and sodomy as well as robbery."**3** Judge Foster did not inquire into whether Saunders would have a conflict in representing Mickens.

Saunders represented Mickens at the guilt phase of his murder trial and at both of his sentencing hearings. Saunders worked with court-appointed co-counsel, Warren Keeling, but Saunders was responsible for about ninety percent of the workload. Keeling took primary responsibility for the sentencing hearings, however. Neither Saunders nor Keeling represented Mickens on his petition for state habeas corpus relief. Saunders never told Mickens or Keeling that he had represented Hall, and Mickens did not learn about the prior representation until federal habeas counsel discovered it in Hall's juvenile file.

The district court denied Mickens' petition for federal habeas corpus relief. Mickens v. Greene, 74 F. Supp. 2d 586 (E.D. Va. 1999). The court rejected Mickens' conflict of interest claim after concluding that "the possible conflict of interest presented by Saunders' successive representation of Hall and Mickens never ripened into an actual conflict nor was Saunders' advocacy impaired thereby." Mickens v. Greene, 74 F. Supp. 2d at 615. The district court also rejected Mickens' other claims, including those for ineffective assistance of counsel and insufficiency of evidence. Mickens appealed, and, on September 14, 2000, a divided panel of this court reversed the decision of the district court. See Mickens v. Taylor, 227 F.3d 203 (4th Cir. 2000).

The Commonwealth's petition for rehearing en banc was granted, and on December 5, 2000, the case was argued before the en banc court. We now affirm.

When this court sits en banc, we review the decision of the district court for error. See 4th Cir. R. 35(c). Because Mickens filed his federal habeas petition after the April 24, 1996, enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, we apply 28 U.S.C. § 2254 as amended by the AEDPA. See Mueller v. Angelone, 181 F.3d 557, 565-72 (4th Cir.), cert. denied, 527 U.S. 1065 (1999).

_____

**3** The robbery and abduction charges were later dismissed for lack of probable cause by Judge Foster at Mickens' preliminary hearing.

7

II.

A criminal defendant's Sixth Amendment right to effective assistance of counsel includes a right to counsel unhindered by conflicts of interest. See Cuyler v. Sullivan, 446 U.S. 335, 345-50 (1980); United States v. Tatum, 943 F.2d 370, 375 (4th Cir. 1991). The Supreme Court has most clearly articulated the threshold for establishing ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). To prevail, a petitioner alleging ineffective assistance of counsel must establish, (1) that his attorney's representation fell below an objectively reasonable performance and (2) that the inadequate performance prejudiced the petitioner's case. Strickland, 466 U.S. at 687. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. This constitutional standard for establishing ineffective assistance of counsel applies equally in federal collateral proceedings as it does on direct appeal. Strickland, 466 U.S. at 697.

Even as the Strickland court clarified the applicable standard for ineffective assistance of counsel, however, it recognized special circumstances addressed by its prior decisions and noted exceptions to the new standard it articulated. The Strickland Court recognized that a claim of ineffective assistance of counsel arising from counsel's conflict of interest presents a special case subject to the standard articulated by Cuyler v. Sullivan, 446 U.S. 335 (1980). See Strickland, 466 U.S. at 692. To establish ineffective assistance of counsel on conflict of interest grounds, a petitioner must establish that (1) his attorney labored under "an actual conflict of interest" that (2) "adversely affected his lawyer's performance." See Sullivan, 446 U.S. at 348. After a petitioner satisfies this two-part test, prejudice is presumed. Sullivan, 466 U.S. at 349.

Mickens presents three alternative arguments for habeas corpus relief on conflict of interest grounds. First, Mickens argues that the trial court's failure to inquire into the extent of his attorney's potential conflict of interest even though the court reasonably should have known of that conflict mandates automatic reversal of his conviction. Second, Mickens argues that, even if the trial court's failure to inquire

8

into his attorney's potential conflict does not require automatic reversal, it relieves him of his burden under <u>Sullivan</u> of establishing that the conflict of interest adversely affected his representation. Finally, Mickens argues that he has satisfied both elements of the two-part <u>Sullivan</u> test and that the district court erred in ruling that his attorney did not labor under an actual conflict of interest that adversely affected his representation. We conclude that <u>Sullivan</u> requires Mickens to establish both an actual conflict of interest and an adverse effect even if the trial court failed to inquire into a potential conflict about which it reasonably should have known. Because we find that Mickens has failed to show an adverse effect, we affirm the decision of the district court and deny Mickens' petition without deciding whether Mickens has demonstrated that his attorney labored under an actual conflict of interest.

Before we examine the merits of Mickens' conflict of interest claim, we address the Commonwealth's argument that his claim is barred under the requirement for exhaustion and the doctrine of procedural default. The exhaustion doctrine bars a claim if it is raised for the first time in a federal habeas petition. See <u>Breard v. Pruett</u>, 134 F.3d 615, 619 (4th Cir.) (citing <u>Matthews v. Evatt</u>, 105 F.3d 907, 911 (4th Cir. 1997)), <u>cert. denied</u>, 523 U.S. 371 (1998). The procedural default doctrine bars a claim when the habeas petitioner "fails to exhaust available state remedies and `the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" <u>Breard</u>, 134 F.3d at 619 (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n.* (1991)).

In a case in the procedural posture present here, a petitioner may overcome both the procedural default and related exhaustion bar by showing cause for the default and actual prejudice arising from the asserted constitutional error. See <u>Breard</u>, 134 F.3d at 620. A petitioner can establish cause by showing "that the factual basis for [the] claim was unavailable to him at the time he filed his state habeas petition." <u>Breard</u>, 134 F.3d at 620; see <u>McCleskey v. Zant</u>, 499 U.S. 467, 493-94 (1991); <u>Williams v. French</u>, 146 F.3d 203, 209 (4th Cir. 1998). The district court concluded that Mickens established cause: "Here, Saunders' silence and state law requirements for secrecy of juvenile court records operated together to preclude Mickens from

9

raising the conflict of interest claims in his state habeas petition." Mickens v. Greene, 74 F. Supp. 2d at 600. The Commonwealth argues that if Mickens' federal habeas counsel was able to discover Saunders' prior representation of Hall, then Mickens' state habeas counsel also could have done so. Virginia law, however, requires juvenile court records to be kept confidential and prohibits their production absent a court order. See Va. Code Ann.§ 16.1-305. As the district court found, "the fortuitous circumstances by which federal habeas counsel discovered the truth about Saunders' conflict prove beyond question that Mickens did not fail in his duty to inquire in the state court proceedings." Mickens v. Greene, 74 F. Supp. 2d at 601 (citing Amadeo v. Zant, 486 U.S. 214, 224 (1988)). It was only through a clerk's mistake that federal habeas counsel saw Hall's juvenile court file, and as soon as a supervisor discovered the error, the file was taken from federal habeas counsel. Under these circumstances, we agree with the district court that "the factual predicate for [the conflicts claim] was not available to Mickens in state court nor was it discoverable through the exercise of diligent investigation." Mickens v. Greene, 74 F. Supp. 2d at 602. Mickens has established cause.

To establish prejudice adequate to excuse his default, a petitioner must show that his counsel's error created more than the "possibility of prejudice" but instead that it "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982). The Supreme Court has identified Sixth Amendment conflict of interest cases as a special circumstance, however, in which prejudice for purposes of the ineffective assistance of counsel inquiry is presumed once a petitioner establishes both of the two aspects of the underlying conflict of interest claim. See Sullivan, 446 U.S. at 349-50. Our inquiry as to prejudice for purposes of excusing Mickens' default thus incorporates the test for evaluating his underlying conflict of interest claim. See Williams, 146 F.3d at 212-13 (analyzing actual prejudice for purposes of procedural default by examining the merits of petitioner's conflict of interest claim); Rosenwald v. United States, 898 F.2d 585, 587 (7th Cir. 1990) (concluding that to show actual prejudice the petitioner must establish the merits of his Sullivan claim). Accordingly, we turn to the merits of Mickens' conflict of interest claim.

10

III.

A.

Mickens argues that the Sixth Amendment mandates automatic reversal of his conviction because the trial court reasonably should have known of his attorney's potential conflict of interest but failed to inquire into the extent of that conflict. Mickens cites Holloway v. Arkansas, 435 U.S. 475 (1978), and Wood v. Georgia, 450 U.S. 261 (1981), in support of this proposition. We accept for purposes of discussion, without deciding the issue, that Judge Foster, who appointed Saunders to represent Mickens, reasonably should have known that Saunders labored under a potential conflict of interest arising from his previous representation of Hall.

We are of opinion, however, that the decision in Holloway v. Arkansas does not require automatic reversal of Mickens' conviction. Holloway dealt with a specific circumstance, not present here, in which a trial court failed to inquire into a potential conflict despite defense counsel's objections. In Holloway, the trial court required one defense attorney to represent three co-defendants in a joint trial despite repeated objections by defense counsel that the joint representation hampered his ability to represent any of the defendants adequately. Notably, he could not cross-examine any of those from whom he had confidential information. Holloway, 435 U.S. at 478-80. The Holloway trial court declined to inquire into prejudice arising from the conflicted representation. While the state court affirmed the two convictions, the Supreme Court reversed the convictions based solely on the trial court's failure, in the face of repeated representations by the single attorney of his impossible burden, to either ascertain the risk of joint representation or appoint separate counsel. Holloway, 435 U.S. at 483-84.

The Holloway Court cited two reasons for finding a Sixth Amendment violation under such circumstances: the obligation of the trial court to protect the right of the accused to have effective assistance of counsel and the trustworthiness of defense counsel's objection that his representation is hampered by a conflict of interest. Holloway, 435 U.S. at 484-85. An objection raised by defense counsel is particularly persuasive evidence of a Sixth Amendment violation because: (1)

11

defense counsel is in the best position to evaluate his potential conflicts of interest; (2) defense attorneys are obligated to inform the court of conflicts of interest; and (3) attorneys are officers of the court whose declarations to the court are "virtually made under oath." Holloway, 435 U.S. at 485-86. The Court stated "We find these considerations persuasive." We think that the rule of Holloway should not apply in a case such as this where there has been no showing of any hindrance of the defense and no objection by the defense to the conflict. In fact, Holloway specifically declined to clarify the extent of a trial court's obligation to inquire into a conflict of interest absent an objection by the defense. Holloway, 435 U.S. at 483-84.

Following Holloway, the Court, in Cuyler v. Sullivan, again addressed a trial court's duty to inquire into conflicts of interest, noting that a trial court must inquire into a conflict of interest when it "knows or reasonably should know that a particular conflict exists." Sullivan, 446 U.S. at 347. The Sullivan Court did not extend the Holloway reversal rule, however, beyond the facts of Holloway to all circumstances in which the defense did not object to a conflict of interest at trial. Absent such an objection, a petitioner must satisfy the two-part conflict-of-interest standard identified by Sullivan, establishing both an actual conflict and an adverse effect. The Sullivan Court recognized this distinction when it noted that "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Sullivan, 446 U.S. at 348.[4]

Mickens argues that a footnote in Wood v. Georgia changed the rule of Sullivan and extended the automatic reversal rule of Holloway to circumstances in which a trial court ignores a conflict about which it reasonably should have known. Wood, 450 U.S. at 273 n.18.[5] In Wood, the Court addressed a conflict of interest issue apparent on the face of the record even though the conflict had not been addressed

_____

[4] While the cases may seem to emphasize lack of objection, we think that the fact of the associated failure to offer to a defendant an opportunity to object to or waive objection to questionable representation is also of consequence.

[5] That part of the footnote is: "Moreover, Sullivan mandates a reversal when the trial court has failed to make an inquiry even though it `knows or reasonably should know that a particular conflict exists.'"

12

below. Wood, 450 U.S. at 262-63. Because the case arose as an appeal from a revocation of probation, the Court analyzed the conflict under the due process clause, rather than Sixth Amendment grounds. Wood, 450 U.S. at 271-72. Nonetheless, the Court cited Sullivan for the proposition that the Sixth Amendment ensures a right to counsel free from conflict of interest. Wood, 450 U.S. at 271. Without the benefit of briefing, the Wood Court could not determine whether defense counsel in the case before the Court labored under an actual conflict of interest. Wood, 450 U.S. at 272. The record was adequate to establish, however, "that the possibility of a conflict of interest was sufficiently apparent at the time of the revocation hearing to impose upon the [trial] court a duty to inquire further." Wood, 450 U.S. at 272. The court noted that "any doubt as to whether the court should have been aware of the [conflict] problem is dispelled by the fact that the [prosecution] raised the conflict problem explicitly" at trial. Wood, 450 U.S. at 272-73. The Wood Court thus clarified that trial courts have an obligation to inquire into potential conflicts of interest when they know or reasonably should know of a particular conflict. The Supreme Court remanded the case and instructed the trial court "to determine whether the conflict of interest that this record strongly suggests actually existed." Wood, 450 U.S. at 273. However, and we emphasize, the Court did not find a due process violation, rather, the Court held that, "Instead, we remand this case for further findings concerning a possible due process violation." Wood, 450 U.S. at 263.

While Mickens, of course, should not be faulted for advocating the adoption of what he argues is an automatic reversal rule in the Wood footnote, we are of opinion that the adoption of such a rule requiring reversal in such cases would be an overly literal application of the language in that footnote. We say this for three reasons.**6**

_____

**6** We recognize that one circuit has apparently applied Wood to create a rule of automatic reversal for cases in which a trial court has failed to inquire into a conflict about which it reasonably should have known. See Ciak v. United States, 59 F.3d 296, 302 (2d Cir. 1995) (reversing a conviction on the grounds that "the Supreme Court in Wood v. Georgia stated that Cuyler . . . requires reversal where a trial court neglects its duty to inquire about a particular conflict") (citations omitted). Several of the circuits, including our own, have cited the automatic reversal rule but have not applied it to reverse a conviction. See United States v.

13

First, the decision itself in the <u>Wood</u> case, as we have noted, did not reach the merits of the due process issue. The decision remanded the case for further findings concerning a possible due process violation.

Second, footnote 18 in the <u>Wood</u> case was in response to the aspect of Justice White's dissent which took issue with jurisdiction to vacate the judgment on a Constitutional ground. Reading that footnote to require reversal in each case in which the trial court has failed to make an inquiry when it might know or should know of a conflict, we think leads to an application of the footnote of the court beyond that which was intended.

Third, in our own case of <u>United States v. Tatum</u>, we also <u>referred</u> to footnote 18 in <u>Wood</u>, <u>Tatum</u>, 943 F.2d at 379, but we <u>applied</u> the rules of <u>Strickland</u> and <u>Sullivan</u>, that there are two requirements for relief in such cases, "an <u>actual conflict</u> of interest resulting in an <u>adverse effect</u> on counsel's performance," <u>Tatum</u>, 943 F.2d at 375 (italics in original), and we went on to show that there was an adverse effect on counsel's performance, pre-trial strategies were adversely affected in that case, one trial counsel was dependent on another for aid in the defense, and obvious avenues for a full defense were not pursued. <u>Tatum</u>, 943 F.2d at 380.

Thus, we are of opinion that the intervening footnote 18 in <u>Wood</u> did not change the rule of <u>Strickland</u> and <u>Sullivan</u>. No adverse effect on the representation of Mickens by his trial attorney having been shown, we hold that there was no Constitutional error shown in this

_____

<u>Tatum</u>, 943 F.2d 370, 379 (4th Cir. 1991); <u>United States v. Crespo de Llano</u>, 830 F.2d 1532, 1538 (9th Cir. 1987); <u>United States v. Cirrincione</u>, 780 F.2d 620, 625 (7th Cir. 1985); <u>United States v. Burney</u>, 756 F.2d 787, 791 (10 Cir. 1985). One other circuit, however, has read <u>Wood</u> as we do. See <u>Brien v. United States</u>, 695 F.2d 10, 15 n.10 (1st Cir. 1982) (rejecting the automatic reversal rule because the <u>Wood</u> court "did not require an automatic reversal of the conviction but merely remanded the case to enable the trial court to conduct the necessary inquiry, the implication being that the convictions would only be overturned if an actual conflict were found").

14

case to require a vacation of Mickens' conviction on account of the fact that Saunders had represented Hall on an entirely unrelated charge at the time of Hall's death at the hands of Mickens.

B.

Mickens now asserts an alternative reading of the <u>Wood</u> decision in his opposition to rehearing that we now address. Mickens argues that, even if <u>Wood</u> does not compel automatic reversal of his conviction, it relieves him of his burden under <u>Sullivan</u> of establishing an adverse effect on his representation in a case where the trial court failed to inquire into a potential conflict about which it reasonably should have known. Mickens notes that the <u>Wood</u> Court remanded to the trial court "to determine whether the conflict of interest that this record strongly suggests actually existed" with an instruction to award a new hearing if "an actual conflict of interest existed at that time" but did not expressly require the trial court to identify an adverse effect. <u>Wood</u>, 450 U.S. at 274. Mickens concludes from this remand instruction that the <u>Wood</u> court eliminated the adverse effect requirement in cases where the trial court failed to inquire into a conflict of interest about which it reasonably should have known. <u>Wood</u>, 450 U.S. at 273. Thus, Mickens reads <u>Wood</u> to have overruled by implication the second part of <u>Sullivan</u>'s two-part standard. However, "[o]verruling by implication is not favored." <u>Catawba Indian Tribe of South Carolina v. South Carolina</u>, 978 F.2d 1334, 1347 (4th Cir. 1992).

But the <u>Wood</u> Court noted that "[o]n the record before us, we cannot be sure whether counsel was <u>influenced in his basic strategic decisions</u> by the interests of the employer who hired him." <u>Wood</u>, 450 U.S. at 272 (emphasis added). <u>If defense counsel had been so influenced</u>, the Court stated, "the due process rights of petitioners were not respected." <u>Wood</u>, 450 U.S. at 272. After these observations, the Court concluded that it was difficult "to determine whether an actual conflict of interest was present." <u>Wood</u>, 450 U.S. at 272. Those comments underscore that the Court was searching the record not just for a conflict of interest, but also for some indication that the conflict adversely affected the attorney's representation of the defendants. When read in this light, the <u>Wood</u> Court's terse instruction to the trial court on remand cannot bear the constitutional weight Mickens ascribes to it. The Court used the term "actual conflict" to refer to a

15

conflict of interest that has adversely affected defense counsel's "basic strategic decisions." Wood, 450 U.S. at 272. As this court has recognized, the two requirements of the Sullivan test, "an actual conflict of interest resulting in an adverse effect on counsel's performance, are often intertwined, making the factual analyses of them overlap." Tatum, 943 F.2d at 375. The Wood Court's instruction to the trial court amounts to no more than shorthand for an explicit two-part test that the Wood Court did not even have occasion to quote in its majority decision, much less to overrule. Thus, we hold that Wood does not relieve Mickens of showing an adverse effect on his attorney's representation.

C.

We now turn to Mickens' argument that the district court erred in deciding that any actual conflict of interest did not adversely affect his representation by Saunders. Because Sullivan requires Mickens to demonstrate both an actual conflict and an adverse effect and because we find that Mickens has failed to identify an adverse effect, as noted, we do not reach his argument that he has established an actual conflict of interest.

Conflicts claims present "mixed questions of law and fact that we review de novo." Williams v. French, 146 F.3d 203, 212 (4th Cir.) (citing Sullivan, 446 U.S. at 342), cert. denied, 525 U.S. 1155 (1999). The district court's factual findings, however, "are subject to the clearly erroneous standard set forth in Rule 52(a), Fed. R. Civ. P." Fields v. Attorney General, 956 F.2d 1290, 1297 n.18 (4th Cir. 1992). Because much of the adverse effect inquiry is heavily fact dependent, we believe appropriate deference should be given to the findings of the district court. In this respect, we note that a significant part of the testimony was taken orally, and the district judge saw the witnesses and heard them testify. We also note that the opinion of the district court was complete, thorough, and thoughtful.

A defendant has established an adverse effect if he proves that his attorney took action on behalf of one client that was necessarily adverse to the defense of another or failed to take action on behalf of one because it would adversely affect another. See Tatum, 943 F.2d at 376. Thus, both taking action and failing to take actions "that are

16

clearly suggested by the circumstances" can indicate an adverse effect. Tatum, 943 F.2d at 376. An adverse effect can arise at any stage of the litigation including pretrial investigation or entry of a plea. See Tatum, 943 F.2d at 376. In this case, Mickens argues that Saunders' continuing duty to Hall prevented him from taking action and pursuing strategies on behalf of Mickens. Of course, Sullivan does not require Mickens to establish that he would have prevailed at trial had Saunders pursued the strategies that Mickens now argues Saunders rejected because of his conflict of interest.

Based on our holding in Tatum, 943 F.2d at 376, we agree with the district court's articulation of a three-part standard for showing an adverse effect which, as in any other civil action, Mickens must establish by a preponderance of the evidence. Mickens v. Greene, 74 F. Supp. 2d at 603-04 (citing Freund v. Butterworth, 165 F.3d 839, 860 (11th Cir. 1999) (en banc)). We add that Freund is not different in any significant way from our cases of Williams v. French, 146 F.3d 203, 212-13 (4th Cir. 1998), and Tatum, 943 F.2d at 376. First, the petitioner must identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued. Second, the petitioner must show that the alternative strategy or tactic was objectively reasonable under the facts of the case known to the attorney at the time of the attorney's tactical decision. In the language of Tatum, the petitioner must show that the alternative strategy or tactic was "clearly suggested by the circumstances." Tatum, 943 F.2d at 376. Finally, the petitioner must establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict.

Mickens challenges this standard, arguing that neither this circuit nor the Supreme Court has required a petitioner to establish a link between an adverse effect and an actual conflict. Such a link is implicit, however, in the Supreme Court's requirement that a petitioner show that "his counsel actively represented conflicting interests" and "that a conflict of interest actually affected the adequacy of his representation." Sullivan, 466 U.S. at 350, 349. As this court has noted, the two requirements, "an actual conflict of interest resulting in an adverse effect on counsel's performance, are often intertwined, making the factual analyses of them overlap." Tatum, 943 F.2d at 375. We conclude that the district court applied the appropriate standard to evaluate the adverse effects asserted by Mickens.

17

The district court carefully considered each of Mickens' claims of adverse effect. Mickens argues that his attorney failed to raise as a defense that Hall had consented to sodomy; failed to investigate Hall's background or to present any negative information about Hall at trial; failed to engage in meaningful plea negotiations; failed to present evidence at sentencing regarding Hall's pending charges or strained relationship with his mother; failed to share information with his co-counsel; failed to investigate leads indicating an alternative perpetrator of the crime; failed to investigate Hall's juvenile file; and failed to adequately cross-examine a key prosecution witness. The district court considered each of these arguments in detail.

The district court concluded that a consent defense was not viable because of evidence that Hall had been subjected to a choke hold and stabbed some 140 times before or during the act of sodomy or attempted sodomy. Mickens v. Greene, 74 F. Supp. 2d at 607. In addition, the district court noted that Mickens denied ever meeting Hall. Mickens v. Greene, 74 F. Supp. 2d at 607. Because Saunders was entitled to rely on the information provided by his client, consensual sodomy was not a viable defense strategy at the time that Saunders made his decision not to pursue it. See Royal v. Taylor, 188 F.3d 239, 248-49 (4th Cir. 1999); Roach v. Martin, 757 F.2d 1463, 1476-80 (4th Cir. 1985).

Neither was the district court persuaded that Mickens suffered an adverse effect because of Saunders' failure to investigate or to raise negative information about Hall. The district court concluded that Saunders did not possess sufficient information relating to rumors that Hall was a male prostitute to warrant an investigation and that, in any event, presentation of such evidence would have been counterproductive and would have been inconsistent with Mickens' assertions of sympathy for the victim and his family. Mickens v. Greene, 74 F. Supp. 2d at 608. By the same token, the district court concluded that evidence related to Hall's assault charge on his mother would have been of limited value. The only conceivably admissible purpose for the evidence would have been impeachment of Hall's mother at the sentencing hearing after she testified about the extent of her grief. Mickens v. Greene, 74 F. Supp. 2d at 608. Choosing not to vilify the mother of the victim cannot be the mark of incompetent counsel by any measure. For obvious reasons, questioning the mother on that

18

point would have been an unattractive strategy. Ultimately, Saunders' co-counsel was primarily responsible for the sentencing hearing, was aware of this information, and made the decision not to use it at the sentencing hearing; so this strategic decision was unrelated to Saunders' conflict of interest. Mickens v. Greene, 74 F. Supp. 2d at 608.

The district court also concluded that Saunders' failure to pursue plea negotiations was not based on his conflict of interest but rather on the unwillingness of the prosecution to bargain. Mickens v. Greene, 74 F. Supp. 2d at 609. The district court found as a non-viable strategy Mickens' argument that evidence should have been introduced as to Hall's claimed assault on his mother, and we agree. Not only was it inconsistent with Mickens' expression of regret for the mother's pain, proving that a decedent has asked for what he got is a defense better reserved for the defense of prosecutions such as murder and manslaughter. Mickens v. Greene, 74 F. Supp. 2d at 609-10.

The district court also concluded that Saunders' failure to investigate into matters identified by Mickens was either harmless or unrelated to Saunders' conflict of interest. Mickens v. Greene, 74 F. Supp. 2d at 610-12. In particular, the district court attributed Saunders' failure to inquire into leads as to possible alternative perpetrators of the murder to the weak nature of the leads, rather than to Saunders' conflict of interest. Mickens v. Greene, 74 F. Supp. 2d at 611-12. The district court also found that Saunders' failure to investigate Hall's juvenile file, while unreasonable, created no adverse effect on Saunders' representation of Mickens because the file contained no information pertinent to Mickens' case. Mickens v. Greene, 74 F. Supp. 2d at 611. The district court rejected Mickens' claim that Saunders failed adequately to cross-examine a key prosecution witness as defaulted for failure to raise the issue in state court. Mickens v. Greene, 74 F. Supp. 2d at 595-96. In any event, Mickens has failed to establish any link between the failure to adequately cross-examine the witness and Saunders' potential conflict of interest.

Finally, the district court considered and rejected Mickens' contention that Saunders concealed his prior representation of Hall from his co-counsel out of a conflicting personal interest in remaining assigned

19

to the case. <u>Mickens v. Greene</u>, 74 F. Supp. 2d at 612-13. We conclude that the district court's findings are largely factual and are not clearly erroneous. Because we agree with the district court that many of Mickens' assertions of adverse effect were not viable defense strategies and that any viable defense strategies were not linked to his attorney's conflict of interest, we reject Mickens' Sixth Amendment challenge to his conviction based on the theory that the claimed conflict had an adverse effect on the representation of his attorney.

IV.

Mickens' other allegations of error are easily addressed. Mickens argues that the district court erred in rejecting his claims for ineffective assistance of counsel. Mickens offers two grounds upon which his representation may be found ineffective under <u>Strickland</u>: his trial counsels' inadequate pretrial investigation and failure of his trial counsel to request a psychiatric evaluation for the resentencing. The first of these claims is that counsel were ineffective because they failed to investigate or to request an investigator for the purpose of gathering evidence for a consent defense and for use in mitigation at sentencing. The district court held that Mickens' claims of inadequate investigation were defaulted because he had not fairly presented them to the Virginia courts. See <u>Matthews v. Evatt</u>, 105 F.3d 907, 911 (4th Cir. 1997). We agree with the district court. See <u>Mickens v. Greene</u>, 74 F. Supp. 2d at 598.

Mickens' second ineffective assistance claim focuses on his counsels' failure to retain a mental health expert to evaluate him for the resentencing. The district court rejected this argument on the merits, it appearing that Mickens had been examined by a psychiatrist on the motion of Saunders. On appeal, Mickens has not established what new information a mental health expert would have discovered beyond what counsel already knew at the time of the resentencing. Moreover, this claim was adjudicated against Mickens on the merits in state court. See <u>Williams v. Taylor</u>, 529 U.S. 362 (2000) (ruling that 28 U.S.C. § 2254(d)(1) prohibits federal court from granting habeas corpus relief with respect to claim adjudicated on the merits in state court unless the resulting decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court). We also reject this claim.

20

Mickens also challenges the sufficiency of the evidence supporting his conviction for attempted forcible sodomy. He further contends that absent sufficient proof of the predicate offense of forcible sodomy his capital murder conviction under Va. Code Ann. § 18.2-31(5) cannot stand. The district court concluded that this claim was defaulted because it was not fairly presented to the state courts. See Matthews, 105 F.3d at 911. Again, we agree with the district court. See Mickens v. Greene, 74 F. Supp. 2d at 597.

In his reply brief Mickens raises the argument that the ineffective assistance of his state habeas counsel excuses the default of additional ineffective assistance of counsel claims raised for the first time in his federal habeas petition. We have held that ineffective assistance by state habeas counsel fails to establish cause. See Mackall v. Angelone, 131 F.3d 442, 449 (4th Cir. 1997) (en banc) ("Because [petitioner] has no right to effective assistance of counsel in his state habeas proceedings, he cannot demonstrate cause to excuse the procedural default of his claims that his trial and appellate counsel were constitutionally ineffective."). The district court held Mickens' additional claims defaulted on this ground. We adopt the district court's analysis on this issue. See Mickens v. Greene, 74 F. Supp. 2d at 595.

V.

In summary, "[t]he purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." Strickland, 466 U.S. at 691-92 (emphasis added). The Sixth Amendment guarantee of counsel does not guarantee an ideal or perfect representation. Thus, Sullivan requires a petitioner challenging his conviction on conflict of interest grounds to establish that his attorney's conflict of interest adversely affected his lawyer's performance. The Supreme Court's decision in Wood does not relieve a petitioner of this burden, even when the trial court has failed to inquire into a potential conflict about which it reasonably should have been aware. Subsequent to Wood, the Strickland Court considered the arguments with respect to a rule of prejudice in conflict of interest cases but explicitly rejected a per se rule and found the rule to be "an actual conflict of interest adversely affected his lawyer's performance." Strickland, 466 U.S. at 692. We reject the automatic reversal rule and conclude that Mickens must

21

establish an adverse effect arising from his attorney's conflict of interest. We deny the other arguments of Mickens for the reasons stated above, and we deny his petition for habeas corpus relief.

Accordingly, the judgment of the district court is

AFFIRMED.**7**

MICHAEL, Circuit Judge, dissenting:

The lawyer appointed to defend Walter Mickens on a capital murder charge in Virginia had been representing the murder victim on criminal charges at the time of his death. The state judge who made the appointment was involved in both cases and knew or should have known of the apparent conflict. No one told Mickens about the conflict problem, so he could not object. Once the back-to-back representation came to light after Mickens had been sentenced to death, the apparent conflict proved to have been a real one. None of this poses a problem, according to the majority, because the lawyer did a passable job in defending Mickens. I respectfully dissent because there is a serious Sixth Amendment violation. A trial judge has a constitutional duty to look into an apparent conflict, even if there is no objection. See Cuyler v. Sullivan, 446 U.S. 335, 347 (1980). When a trial

_____

**7** The theme of the dissent is candid and is repeated in various forms and wordings from time to time. At first appearance, slip p. 22-23, it is

> When a trial judge ignores an apparent conflict, a defendant need only show that his lawyer labored under an actual conflict to establish a Sixth Amendment claim. The defendant is not required to show that the actual conflict adversely affected his lawyer's performance. (Italics added.)

While the theory is laudable, it searches for a perfect trial rather than a fair trial. It would plainly require a new trial although there is no adverse effect on the attorney's performance. So, even a defense as brilliant as that of Erskine would be impossible to justify if a technical conflict existed which had no effect on the performance. We do not believe that this is the law, and are of opinion that a technical conflict, as here, which had no effect on the performance of the attorney, is not such a structural error that vacation of a conviction by way of habeas corpus is called for.

judge ignores an apparent conflict, a defendant need only show that his lawyer labored under an actual conflict to establish a Sixth Amendment claim. The defendant is not required to show that the actual conflict adversely affected his lawyer's performance. Here, the judge who appointed the lawyer for Mickens ignored the apparent conflict; and, as it turns out, the lawyer was actually saddled with a genuine conflict while he represented Mickens. Mickens's Sixth Amendment right to conflict-free counsel was therefore violated, and he is entitled to a new trial.

I.

On March 20, 1992, Bryan Saunders was appointed to represent Timothy Hall on assault and concealed weapon charges pending in Newport News, Virginia. (It was Hall's mother who had accused him of assaulting her.) Hall met promptly with Saunders, and they discussed the circumstances surrounding each of the charged crimes. Within a matter of days, on March 30, 1992, Hall's nude body was found near the James River, and foul play was evident. The gruesome nature of the crime against Hall was prominently reported by the news media. On April 3, 1992, state judge Aundria Foster dismissed the charges against Hall on account of his murder. Judge Foster's handwritten order of dismissal was entered on a single-page docket sheet that identified Saunders as Hall's lawyer. The next business day Judge Foster appointed Saunders to represent Mickens, who had been charged in Hall's murder. Despite the fact that Saunders was representing Hall on criminal charges at the time of his death, Judge Foster did not make any inquiry into whether Saunders would have a conflict in representing Mickens. As the district court concluded, Judge Foster knew or should have known of the "apparent possible conflict." Mickens v. Greene, 74 F. Supp. 2d 586, 613-15 (E.D. Va. 1999).

Because Saunders's loyalty was subject to question when he was appointed to represent Mickens, Saunders himself had the duty to inform Mickens of his prior representation of Hall and to give Mickens the opportunity to decline his services. See Va. Code Prof'l Responsibility DR5-105(A) (Michie 1992). Saunders, however, said nothing to Mickens, or to the court for that matter. Saunders went on to represent Mickens at the guilt phase of his murder trial and at sentencing. Although Saunders was assisted by court-appointed co-

23

counsel, Saunders was responsible for about ninety percent of the workload. Saunders never disclosed to his co-counsel that he had represented Hall. Several years after Mickens had been sentenced to death, Mickens's federal habeas counsel stumbled onto the fact that Saunders was representing the murder victim (Hall) at the time of the offense. That is the only reason we have this case today.

II.

The Sixth Amendment guarantees a defendant in a criminal case the right to effective assistance of counsel, and this includes the right to a lawyer who is free of conflicts of interest. See Cuyler v. Sullivan, 446 U.S. 335, 345-50 (1980). Trial judges have a special duty to enforce the right to conflict-free counsel. See generally Holloway v. Arkansas, 435 U.S. 475, 484 (1978) (emphasizing that "`[u]pon the trial judge rests the duty of seeing that the trial is conducted with solicitude for the essential rights of the accused'") (quoting Glasser v. United States, 315 U.S. 60, 71 (1942)). A series of three Supreme Court cases have clarified the duty of trial judges in policing conflict situations and have established what a defendant must show to obtain a new trial when the judge has ignored an apparent conflict.

In Holloway a public defender representing three defendants in a robbery and rape case moved on conflict grounds to have separate counsel appointed before the trial began. The trial judge "failed to take adequate steps" to explore the risks of a conflict and denied the motion. Holloway, 435 U.S. at 487. The Court held that when a trial judge fails to inquire in such a circumstance, prejudice to the accused is presumed, and automatic reversal is warranted. In other words, the defendants were not required to show that their lawyer labored under an actual conflict of interest or that an actual conflict adversely affected his performance. See id. at 488-89. The Holloway Court explicitly left open the question of whether (or under what circumstances) the Sixth Amendment imposes an independent duty on a trial judge to inquire into a potential conflict when there is no objection or motion. See id. at 483-84.

Holloway was followed by Cuyler v. Sullivan, 446 U.S. 335 (1980), where two privately retained lawyers represented three defendants who were accused of the same murders but tried separately. In

24

Sullivan the only defendant to be convicted claimed that his right to conflict-free counsel had been violated even though there was no timely objection to the multiple representation. The Court said that the defendant's claim raised the issue "expressly reserved in Holloway v. Arkansas," that is, "whether a state trial judge must inquire into the propriety of multiple representation even though no party lodges an objection." Sullivan, 446 U.S. at 345. The Supreme Court held that "[u]nless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." Id. at 347. In other words, a trial judge has a constitutional duty to inquire when a conflict is sufficiently apparent. Because the situation in Sullivan did not suggest that the trial judge should have reasonably known about any conflict, the judge was under no affirmative duty to inquire. See id. For that particular situation -- when the trial judge has no duty to inquire -- the Court in Sullivan announced the defendant's burden for establishing a Sixth Amendment violation: he "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Id. at 348. Sullivan, however, did not articulate the defendant's burden when a trial court has a duty to inquire, but fails to fulfill it.

Wood v. Georgia, 450 U.S. 260 (1981), answered the question left open in Sullivan: more specifically, what must a defendant demonstrate when he did not raise the conflict issue at trial, but the situation nevertheless triggered the judge's duty to inquire and the judge did nothing. In Wood two individual defendants in an obscenity case had been represented by a lawyer hired by their employer, and the record suggested that the employer might have been more interested in pressing broader legal principles than in seeking lenient treatment for its employees. See id. at 268, 272-74. There was no objection to the representation, but the trial judge was faced with an "apparent" conflict, one that was clearly suggested by the circumstances. See id. at 262. Because there was an apparent conflict, Wood held that the judge had a constitutional duty to inquire, despite the absence of an objection. See id. at 272-74. This is consistent with Sullivan, which requires a trial court to "initiate an inquiry" when it "knows or reasonably should know that a particular conflict exists." Sullivan, 446 U.S. at 347. In Wood the trial court's failure to fulfill its constitutional duty to inquire carried the following consequence, according to the Supreme Court:

25

> [The state] court should hold a hearing to determine whether the conflict of interest that this record strongly suggests actually existed at the time of the probation revocation or earlier. If the court finds that an actual conflict of interest existed at that time, and that there was no valid waiver of the right to independent counsel, it must hold a new revocation hearing that is untainted by a legal representative serving conflicting interests.

Wood, 450 U.S. at 273-74. Simply put, the petitioners were only required to show an actual conflict. They were not required to show that the actual conflict adversely affected their lawyer's performance.

Holloway, Sullivan, and Wood deal with three separate circumstances in which conflict of interest claims arise under the Sixth Amendment. The first is when a defendant objects to his representation on the basis of a conflict and the trial judge fails to inquire into the merits of the objection. In this situation, the defendant is entitled to automatic reversal and a new trial. See Holloway, 435 U.S. at 488-89. The second circumstance is when there is no objection to the representation, but the judge knew or reasonably should have known about an apparent conflict. If the judge fails to inquire in this situation, the defendant is only required to show that his lawyer labored under an actual conflict. See Wood, 450 U.S. at 273-74. The third circumstance is when there is no objection, and the conflict is not apparent to the judge. In that case, the defendant must show that his lawyer labored under an actual conflict and that the conflict adversely affected his lawyer's performance. See Sullivan, 446 U.S. at 348.

The majority's critical mistake is overlooking the careful distinction the Supreme Court made in Sullivan between the second and third situations. The distinction turns on whether the trial court faces an apparent conflict. The majority ignores this distinction and concludes that unless there is an objection -- no matter how obvious the conflict might appear to the trial judge -- the defendant must still demonstrate both actual conflict and adverse effect when the judge has failed in his constitutional duty to inquire.

The majority's mistake begins with its treatment of Sullivan. The Supreme Court in Sullivan held that whether or not there is an objec-

26

tion, a trial court has a duty to inquire into an apparent conflict. The Court was clear: "Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." Id. at 347. The majority erroneously concludes that this statement is nothing more than a recitation of the Holloway holding, that is, a trial court must inquire into a conflict when there is an objection. See ante at 12. I respectfully suggest that the majority's reading is wrong for several reasons. First, if Sullivan was simply echoing Holloway, surely the Court would have cited Holloway. Instead, the Court cited to Foxworth v. Wainwright, 516 F.2d 1072, 1076-77 (5th Cir. 1975), and United States v. Medel, 592 F.2d 1305, 1312-13 (5th Cir. 1979), both of which stand for the principle that when a conflict is sufficiently apparent, a trial judge has a constitutional duty to inquire, even if there is no objection.* Second, the Court in Sullivan pointed out that the defendant's claim raised the issue "expressly reserved in Holloway v. Arkansas," specifically, "whether a state trial judge must inquire into the propriety of multiple representation even though no party lodges an objection." Sullivan, 446 U.S. at 345. The Court, therefore, was careful to explain that the defendant's claim raised an undecided issue: whether the trial court has any Sixth Amendment duty to inquire into a conflict situation when there is no objection. The Court decided this issue by declaring that a trial court "must initiate an inquiry" when it "knows or reasonably should know that a particular conflict exists." Id. at 347. This statement was not a simple recitation of Holloway's holding, but rather a new constitutional rule. Third, the Court's actual analysis of whether "the trial court [knew] or reasonably should [have known]" that a conflict existed shows that the Court was going beyond Holloway, where the

_____

* In Foxworth the Fifth Circuit vacated a conviction because the trial court failed to inquire into an apparent conflict, even though the record did not reflect an objection. See 516 F.2d at 1080 n.17. Significantly, in these circumstances, the court held that a defendant need only show an actual conflict and need not show adverse effect. See id. at 1077 n.7.

In Medel the Fifth Circuit said, "We . . . reject [the defendants'] contention that the trial court was under an affirmative duty to inquire into the possibility of a conflict of interest. Defense counsel . . . never indicated to the trial court that a conflict might exist. Nor do we find anything in the record that should have alerted the Court to such a possibility." 592 F.2d at 1312-13 (emphasis added).

27

presence of an objection dictated the outcome. The <u>Sullivan</u> Court, in deciding that the trial judge was under no duty to inquire, noted that there was no objection to the representation <u>and</u> that the defense strategy did not suggest a conflict. <u>See Sullivan</u>, 446 U.S. at 347. If the defendant's Sixth Amendment claim had been only a <u>Holloway</u> claim, the lack of an objection would have (by itself) defeated the claim. There would have been no reason for the Court to explain that the defense strategy did not suggest the presence of any conflict. Fourth, the majority's reading of <u>Sullivan</u> is contrary to the plain language of the holding in the case. The Supreme Court said that a trial court has a duty to inquire if it "should have known" about a conflict. This means that the trial court's duty to inquire is not limited to situations where there is an actual objection. Accordingly, it is clear that <u>Sullivan</u> held that in the absence of an objection, a trial judge still has a duty to inquire if the conflict is sufficiently apparent.

In light of <u>Sullivan</u> the majority's analysis fails as a matter of logic. The majority holds that in every case where there was no objection, the convicted defendant (in order to obtain relief) must show actual conflict and adverse effect, regardless of whether there was an apparent conflict when the case was tried. Under the majority's rule, it makes no difference whether the trial judge had a constitutional duty to inquire because the defendant must always prove the same two conditions. <u>Sullivan</u>, however, dictates that there is a distinction between cases in which the trial judge has a duty to inquire and those in which he does not. As a result, it is simply wrong to hold every defendant to the same burden regardless of whether the trial court was under a duty to investigate an apparent conflict. <u>Wood v. Georgia</u> makes that clear.

This brings me to the majority's next critical mistake, its treatment of <u>Wood v. Georgia</u>. The plain language of <u>Wood</u> provides that when a trial court fails to fulfill its constitutional duty to inquire and there was no objection, a defendant is only required to establish an actual conflict. <u>Wood</u>, 450 U.S. at 273-74. The majority does not deny that <u>Wood</u>'s remand instructions say as much. The majority, however, advances two reasons why we should not take <u>Wood</u> literally, but neither reason is persuasive. First, the majority says that to dispense with a showing of adverse effect, we must read <u>Wood</u> to have overruled <u>Sullivan</u> by implication. The majority then cites the canon that "over-

28

ruling by implication is not favored." Ante at 15 (citing Catawba Indian Tribe v. South Carolina, 978 F.2d 1334, 1347 (4th Cir. 1992)). However, as shown above, Wood did not overrule Sullivan in any way. Rather, Wood simply answered the question left open in Sullivan. As a result, the cited canon has no relevance to this case. Second, the majority claims that Wood's reference to "actual conflict" in its holding is mere "shorthand" for requiring both actual conflict and adverse effect. Ante at 16. The majority arrives at this conclusion because the Wood Court, in discussing the facts of the case, questioned whether the lawyer's performance ("his basic strategic decisions") were influenced by a conflict. See ante at 16 (quoting Wood, 450 U.S. at 272). The majority concludes that if only an actual conflict was required, the Court would not have made any reference to whether the lawyer's work had been affected. However, the fact that a lawyer's performance was affected can be evidence of an actual conflict. Of course, a defendant can establish that his lawyer labored under an actual conflict without showing a detrimental effect on the representation. Nevertheless, the fact that a lawyer fell down in his performance may be a strong indication that he did labor under an actual conflict. See United States v. Tatum, 943 F.2d 370, 375 (4th Cir. 1991) ("The two requirements, an actual conflict of interest resulting in an adverse effect on counsel's performance, are often intertwined, making the factual analyses of them overlap."). Therefore, it is not surprising that the Wood Court mentioned the quality of performance, even though the holding only required a showing that the lawyer labored under an actual conflict.

The final mistake the majority makes is not acknowledging the importance of Sullivan and Wood to our system of justice. Again, the Supreme Court distinguishes between the situation where the trial judge ignores an obvious conflict and the situation where the conflict is not apparent. This distinction takes into account the broader harm caused if a judge conducts a trial while ignoring an apparent conflict. Allowing a judge to ignore a conflict "invites disrespect for the integrity of the court," United States v. Wheat, 486 U.S. 153, 162 (1988) (internal quotations marks omitted), and "result[s] in the erosion of public confidence in the integrity of the bar and of the legal system." United States v. Collins, 920 F.2d 619, 627 (10th Cir. 1990) (internal quotation marks omitted). Courts in our country "have an independent interest in ensuring that criminal trials are conducted within the ethi-

29

cal standards of the profession and that legal proceedings appear fair to all who observe them." <u>Wheat</u>, 486 U.S. at 160. These concerns require us to treat a defendant's claim that a judge ignored an apparent conflict differently from other conflict of interest claims. The majority, however, treats all conflict claims the same, unless there is an objection. Under the majority's approach a defendant can be required to take a lawyer with divided loyalties so long as he does a tolerable job, and the defendant does not lodge a timely objection. The Sixth Amendment requires more. A criminal defendant has the right <u>from the outset of proceedings</u> to a lawyer who is free of conflicts. Yet the majority would impose no added consequence when a trial judge knowingly allows an unwitting defendant to proceed with a lawyer who has an apparent conflict. In this situation, the majority holds, the defendant's burden is the same as when the conflict is not known to the court until after a guilty verdict. In both cases, the defendant must show both an actual conflict and adverse effect, according to the majority. But under <u>Sullivan</u> and <u>Wood</u>, when the conflict is obvious and the trial judge ignores his duty (and opportunity) to see that the Sixth Amendment right is protected, the Supreme Court lessens the defendant's burden. He need only show that his lawyer had an actual conflict. This lower burden on defendants encourages trial courts to pay strict attention to fundamental rights, and it confirms that our system is dedicated to ensuring fairness. The majority opinion, which goes against the decisions of the Supreme Court, does nothing to encourage trial courts to take the initiative in policing obvious conflicts of interest. That is unfortunate.

III.

The state judge faced (or actually created) an apparent conflict when she appointed Bryan Saunders to represent Walter Mickens in his capital murder case. The judge should have investigated the conflict problem at once and resolved it before it was too late. Instead, Mickens was put on trial and sentenced to death with a lawyer who labored under an actual conflict of interest. See <u>Mickens v. Taylor</u>, 227 F.3d 203, 213-17 (4th Cir. 2000), <u>vacated & reh'g granted</u>, Oct. 23, 2000 (explaining why Mickens's lawyer had an actual conflict). Mickens must answer to the charge of capital murder, but he should answer through a lawyer whose representation is not clouded by a conflict. Because Mickens's Sixth Amendment right to conflict-free

30

counsel was violated, I would award him a writ of habeas corpus unless the Commonwealth of Virginia grants him a new trial.

I respectfully dissent, and Judge Motz and Judge King join with me.

31